Ronald A. Offret, AK Bar # 7410096
Aglietti, Offret & Woofter
733 W 4th Avenue, Suite 206
Anchorage, AK 99501
Telephone:   (907) 279-8657
Facsimile:    (907) 279-5534

## UNITED STATES DISTRICT COURT DISTRICT OF ALASKA

| | |
|---|---|
| HYON N. MORRISSETTE,<br>         Plaintiff,<br><br>vs.<br>A&W ALASKA INC.;<br>MTN. VIEW SHELL, FOOD MART<br>And A&W RESTAURANT;<br>LISA SUZUKI and TERRY SUZUKI,<br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 3:04-cv-0017 (RRB)<br>) |

### TRIAL BRIEF

This matter concerns the residual value of a Shell service station and food mart at 3635 Mountain View Drive in Anchorage, Alaska. The case is before this Court on Remand from the Ninth Circuit Court of Appeals on a triable issue of fact as to whether Hyon Morrissette is entitled to recover restitution of the value of the service station under the quasi-contractual doctrine of unjust enrichment, i.e. what value did the station have when defendants turned it back to Shell including what value the defendants received from the discharge of their lease obligations to Shell.

### Parties

The Plaintiff is Hyon (Helen) N. Morrissette. During significant portions of the time involved in this matter she was married to Kyung Rock (Rocky) Kim. The Divorce Court gave Helen the right to possession of the service station at 3635 Mountain View Drive and also awarded her that asset in the property settlement division.

The Defendants are A&W Alaska Inc., d/b/a Mountain View Shell, Food Mart and A&W Restaurant, and Lisa Suzuki its President and Terry Suzuki its Vice-President.

Plaintiff and Defendants have agreed that as to any jury verdict in Plaintiffs favor, they will be jointly and severally liable thereon.

## Theories of Recovery

Plaintiff believes the Memorandum Decision of the United States Court of Appeals for the Ninth Circuit entered February 9, 2007 is the controlling authority and sets out the theories of recovery as Restitution for the value of the service station at the time it was turned back to Shell in December 2003, including the value to defendants by release/extinguishment of the remaining 15 months of lease payments of $14,563.00.

Defendants contend the station had a $0.00 value at the time it was turned back. There is a question as to the status of Defendants counterclaim for reimbursement for money defendants put into the station from August 5, 2003 when they took possession of the station until the time it was turned back to Shell.

## Applicable Facts and Anticipatory Proof

Plaintiff believes the following facts support her claim. Exhibits support many of the facts. The exhibit supporting said fact is indicated.

On April 1, 2002 Defendant A&W Alaska Inc. d/b/a Mountain View Texaco entered into a 36-month lease with Shell Oil Products US for the Shell Gas station and A&W Food Mart located at 3635 Mountain View Drive, Anchorage, Alaska 99504. (Ex. 3)

Plaintiff Morrissette and her husband Rocky were married in 1999.

On November 11, 2002 Plaintiff and her husband Rocky Kim bought the business from defendants and agreed to assume the remainder of the 36-month lease. (Ex. 1)

Plaintiff paid $241,760.54 for the business from her funds as follows:

| | | | |
|---|---|---|---|
| 7/10/02 #738 | $10,000 | Payable to Lisa Suzuki | |
| 10/28/02 #751 | $50,000 | Payable to Lisa who borrowed this money. | |
| 11/08/02 #756 | $2,000 | Payable to Lisa Suzuki | |
| 11/11/02 #759 | $90,471 | Payable to Lisa Suzuki | |
| Cash at closing | $47,529 | | |
| | $200,000 with note for $41,760.54 | | |
| Note paid as follows: | | | |
| 1/06/03 #770 | $20,000 | from check for $70,000 Payable to Lisa Suzuki | |
| 1/06/03 | $11,760.54 | Payable to Lisa Suzuki (MBNA Check #0731) | |
| discount | $10,000.00 | | |
| Total | $241,760.54 | (Exhibit 2) | |

Plaintiffs husband Rocky took over possession of the station and started to run it. Rocky did not have any training in running a service station, nor did he take the training

program required by Shell for new franchise holders and so the business started to lose money.

After the purchase of the station Morrissette and her husband separated on February 26, 2003 and later filed for divorce.

Morrissette says Terry Suzuki called her several times after the separation and complained about unpaid bills of the station such as the monthly lease payment and that she needed to do something about it. Suzuki told her that in order to save the investment in the station, Morrissette should petition the divorce court to allow her to take possession of and run the station. If she would do this Terry Suzuki told her he would buy the station back and asked her at what price. Helen commented on her purchase price of $241,760 but she would sell it at $150,000. She wanted to make sure this offer was a fulfillment of the right of first refusal required to be given to Defendants under the Agreement for Sale of Business. (Ex. 1). Suzuki agreed to buy it at $150,000.

Morrissette petitioned the divorce court and with consent of her husband, Morrissette was given possession of the business effective August 1, 2003. (Ex. 28)

On August 5, 2003 Helen went Defendants office on Gambell Street and turned over the keys and also gave a check for $10,000 to cover the unpaid bills. (Ex. 2, check no. 974). The Station's bank account at Wells Fargo was also transferred with a balance of $10,566.68 (Ex. 27).

When Helen took over possession of the Station her husband Rocky did not advise her of the passwords on the EFT account and the balance in that account was unknown when the station was given to Defendants. The EFT account was were all the credit card sales would be deposited. It was this account from which Shell would withdraw the cost of the gas to the station and would also withdraw the monthly lease payment. If the account did not have enough in it to pay those charges, the station would have to deposit its own funds to make up the difference.

August rent was due on August 15, and remained unpaid as of August 16th 2003. (Ex. 26).

Prior to the Divorce Court turning over the station to Morrissette, Terry Suzuki expressed concern about the fact he was still obligated on the monthly lease payments to

Shell. He advised that in repurchasing the station it would be easier to do if the lease were still in his name.

As of September 2, 2003 Suzuki did not seem interested in a repurchase, but rather wanted to go forward with the original agreement, however he wanted more money from Morrissette to pay the bills. (Ex. 7). After seeing the August profit/loss statement Morrissette is concerned about the bills and asks Suzuki for a current list of all obligations. (Ex. 7)

By letter of September 4th Suzuki agrees to help in returning the station to Morrissette (Ex. 8).

Morrissette contacts shell to advise she will be taking over the station and needs to get the application from Shell to do so (Ex. 9).

On September 8, 2003 Morrissette takes her nephew David Cho to the Shell station to take over management. The station manager Jerry Herman called Suzuki who tells them to call police if necessary and to tell Helen and her nephew to leave because they are trespassing. (Ex. 10, e-mail Havelock to O'Phelan @ 1:57PM).

Over the course of the next several days letters go back and forth between the parties attorneys as to how to proceed. Suzuki will not let Helen take possession of the store until the application is approved by Shell.

On September 16, 2003 Helen e-mails Shell to get information on the Retailer application forms. (Ex. 25, page 5 of 9).

September 17, Suzuki sends Morrissette an Agreement for Management of Business and plan to hand over the Mt View station to Morrissette, and confirmed the same with Shell, leaving the amount he says she owes him to be decided later by an arbitrator. (Ex. 15)

By September 23rd, David Cho (the Nephew) had contacted Suzuki about training at the station and Suzuki said would get back to David with an answer in a few days. (Ex. 25, page 4 of 9)

Oct. 7, 2003 John Scott of Shell gets back to Helen with information on the retailer application forms. (Ex. 25, page 5 of 9).

By Oct 28, 2003 Suzuki has again changed his mind and e-mails his attorney Havelock about numerous phone calls with Helen regarding the PURCHASE of the Mt. View Shell and tells Havelock to finalize the purchase agreement. (Ex. 25, page 6 of 9).

Suzuki sends a follow-up e-mail to Helen telling her Havelock with have the agreement soon. (Ex. 25, page 7 of 9).

On November 5, 2003, Havelock prepares "SALE AGREEMENT" and e-mails it to Suzuki who forwards it to Helen (Ex. 25, pages 8&9). "AGREEMENT FOR SALE OF BUSINESS" is attached to the e-mail and includes a sales price at $125,000, less refund of amounts owed Suzuki. (Ex. 4).

In a letter of December 3, 2003 (Ex. 16) by Havelock to Kasmar (Morrissette's then attorney) Suzuki says that the "sale is dead." Suzuki then talks about a plan to get the rent to Shell reduced from $12,000 per month to $8,000 per month. Suzuki wants to put the burden on Shell to reduce the lease price. "Ms. Morrissette should immediately pick up her pursuit of authorization to hold the franchise from Shell. If she had not filed her application, she should do so immediately. A&W will hand over operations to her immediately upon advice from Shell that she is ready. Please understand that without Shell's approval, there is no property and Shell can withdraw the right to use its name, etc, on the spot." (Ex. 16) Suzuki reminds that rent is due on December 15, 2003. Later he says, "We look to work cooperatively with Ms. Morrissette in transferring the management of the franchise to her since that appears to be her choice, but she needs to recognize the facts and she needs to keep you fully informed." (Ex. 16).

Suzuki and Morrissette continue back and forth over sale or management of the business but cannot come up with any agreement.

Finally the December rent of $14,596 is due on the 15th, and A&W says it doesn't have the money. (Ex. 19). Suzuki wants Morrissette to advance the money, which she is willing to do if Suzuki will sign the Purchase/Sale agreement but he will not.

Suzuki wants to send Shell a letter saying A&W will not operate the station at the present monthly lease price of $14,596 and will turn it back if the monthly payment is not reduced. (Ex 19). This letter only gives Shell 12 days notice as opposed to the 60 days required by the lease. (Ex. 20).

The Station is closed down on December 15, 2003 and is turned over to Shell without Morrissette's consent or agreement.

## Stipulations and agreements of the parties

The parties have made several agreements which should facilitate the trial of this matter:

1. The parties agree that the all defendants are jointly and severally liable for any and all damages if a judgment is entered in Plaintiffs favor. This means that Plaintiff need not produce any evidence to "pierce the corporate veil."

2. The parties agree that Plaintiff can have witness David Ho testify telephonically.

3. The parties agree that if Plaintiff uses testimony from Lisa Suzuki by deposition that should Defendant need her testify to rebut such testimony that she may be called as a witness telephonically.

## Citations to controlling Statutes and Cases

The case is controlled by the opinion of the 9th Circuit Court of Appeals as previously set forth. That Court found the following cases to be indicative of its holding:

*Alaska Sales and Service, Inc. v. Millet*, 735 P2d 743 (Alaska 1987)

## Evidentiary Issues

Defendant Terry Suzuki was the one with whom Plaintiff had most her dealings over the Mountain View Shell Station and A&W Food Mart. The credibility of Mr. Suzuki's testimony will make a difference as to whether the jury believes him. Mr. Suzuki was convicted of one count of Bank Fraud under 18 USC section 1344 in the United States District Court for the Central District of California on February 2, 1998 and imprisoned. The Order of Judgment and Probation was signed February 5, 1998.

A certified copy of the Order of Judgment and Probation is Exhibit 29 in Plaintiffs Exhibits.

Evidence Rule 609 deals with Impeachment by Evidence of Conviction of Crime.

Rule 609(a)(2) states:

> Evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.

Rule 609 (b) says the conviction is admissible if not over 10 years has elapsed since the date of the conviction.

Respectfully submitted this ___ day of May 2007 at Anchorage, Alaska.

                      AGLIETTI, OFFRET & WOOFTER
                      Attorneys for Plaintiff

                      _____
                      Ronald A. Offret, #7410096

I certify that on 3/14/2007
A copy of the foregoing
Was served on
John Havelock
Per the ECF system.

_____
Ronald A. Offret

Ronald A. Offret, AK Bar # 7410096
Aglietti, Offret & Woofter
733 W 4th Avenue, Suite 206
Anchorage, AK 99501
Telephone:   (907) 279-8657
Facsimile:    (907) 279-5534

## UNITED STATES DISTRICT COURT DISTRICT OF ALASKA

| | |
|---|---|
| HYON N. MORRISSETTE,<br>Plaintiff,<br><br>vs.<br>A&W ALASKA INC.;<br>MTN. VIEW SHELL, FOOD MART<br>And A&W RESTAURANT;<br>LISA SUZUKI and TERRY SUZUKI,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:04-cv-0017 (RRB)<br>) |

### TRIAL BRIEF

This matter concerns the residual value of a Shell service station and food mart at 3635 Mountain View Drive in Anchorage, Alaska. The case is before this Court on Remand from the Ninth Circuit Court of Appeals on a triable issue of fact as to whether Hyon Morrissette is entitled to recover restitution of the value of the service station under the quasi-contractual doctrine of unjust enrichment, i.e. what value did the station have when defendants turned it back to Shell including what value the defendants received from the discharge of their lease obligations to Shell.

### Parties

The Plaintiff is Hyon (Helen) N. Morrissette. During significant portions of the time involved in this matter she was married to Kyung Rock (Rocky) Kim. The Divorce Court gave Helen the right to possession of the service station at 3635 Mountain View Drive and also awarded her that asset in the property settlement division.

The Defendants are A&W Alaska Inc., d/b/a Mountain View Shell, Food Mart and A&W Restaurant, and Lisa Suzuki its President and Terry Suzuki its Vice-President.

Plaintiff and Defendants have agreed that as to any jury verdict in Plaintiffs favor, they will be jointly and severally liable thereon.


## Theories of Recovery

Plaintiff believes the Memorandum Decision of the United States Court of Appeals for the Ninth Circuit entered February 9, 2007 is the controlling authority and sets out the theories of recovery as Restitution for the value of the service station at the time it was turned back to Shell in December 2003, including the value to defendants by release/extinguishment of the remaining 15 months of lease payments of $14,563.00.

Defendants contend the station had a $0.00 value at the time it was turned back. There is a question as to the status of Defendants counterclaim for reimbursement for money defendants put into the station from August 5, 2003 when they took possession of the station until the time it was turned back to Shell.

## Applicable Facts and Anticipatory Proof

Plaintiff believes the following facts support her claim. Exhibits support many of the facts. The exhibit supporting said fact is indicated.

On April 1, 2002 Defendant A&W Alaska Inc. d/b/a Mountain View Texaco entered into a 36-month lease with Shell Oil Products US for the Shell Gas station and A&W Food Mart located at 3635 Mountain View Drive, Anchorage, Alaska 99504. (Ex. 3)

Plaintiff Morrissette and her husband Rocky were married in 1999.

On November 11, 2002 Plaintiff and her husband Rocky Kim bought the business from defendants and agreed to assume the remainder of the 36-month lease. (Ex. 1)

Plaintiff paid $241,760.54 for the business from her funds as follows:

| | | |
|---|---|---|
| 7/10/02 #738 | $10,000 | Payable to Lisa Suzuki |
| 10/28/02 #751 | $50,000 | Payable to Lisa who borrowed this money. |
| 11/08/02 #756 | $2,000 | Payable to Lisa Suzuki |
| 11/11/02 #759 | $90,471 | Payable to Lisa Suzuki |
| Cash at closing | $47,529 | |
| | $200,000 with note for $41,760.54 | |
| Note paid as follows: | | |
| 1/06/03 #770 | $20,000 | from check for $70,000 Payable to Lisa Suzuki |
| 1/06/03 | $11,760.54 | Payable to Lisa Suzuki (MBNA Check #0731) |
| discount | $10,000.00 | |
| Total | $241,760.54 | (Exhibit 2) |

Plaintiffs husband Rocky took over possession of the station and started to run it. Rocky did not have any training in running a service station, nor did he take the training

program required by Shell for new franchise holders and so the business started to lose money.

After the purchase of the station Morrissette and her husband separated on February 26, 2003 and later filed for divorce.

Morrissette says Terry Suzuki called her several times after the separation and complained about unpaid bills of the station such as the monthly lease payment and that she needed to do something about it. Suzuki told her that in order to save the investment in the station, Morrissette should petition the divorce court to allow her to take possession of and run the station. If she would do this Terry Suzuki told her he would buy the station back and asked her at what price. Helen commented on her purchase price of $241,760 but she would sell it at $150,000. She wanted to make sure this offer was a fulfillment of the right of first refusal required to be given to Defendants under the Agreement for Sale of Business. (Ex. 1). Suzuki agreed to buy it at $150,000.

Morrissette petitioned the divorce court and with consent of her husband, Morrissette was given possession of the business effective August 1, 2003. (Ex. 28)

On August 5, 2003 Helen went Defendants office on Gambell Street and turned over the keys and also gave a check for $10,000 to cover the unpaid bills. (Ex. 2, check no. 974). The Station's bank account at Wells Fargo was also transferred with a balance of $10,566.68 (Ex. 27).

When Helen took over possession of the Station her husband Rocky did not advise her of the passwords on the EFT account and the balance in that account was unknown when the station was given to Defendants. The EFT account was were all the credit card sales would be deposited. It was this account from which Shell would withdraw the cost of the gas to the station and would also withdraw the monthly lease payment. If the account did not have enough in it to pay those charges, the station would have to deposit its own funds to make up the difference.

August rent was due on August 15, and remained unpaid as of August 16th 2003. (Ex. 26).

Prior to the Divorce Court turning over the station to Morrissette, Terry Suzuki expressed concern about the fact he was still obligated on the monthly lease payments to

Shell. He advised that in repurchasing the station it would be easier to do if the lease were still in his name.

As of September 2, 2003 Suzuki did not seem interested in a repurchase, but rather wanted to go forward with the original agreement, however he wanted more money from Morrissette to pay the bills. (Ex. 7). After seeing the August profit/loss statement Morrissette is concerned about the bills and asks Suzuki for a current list of all obligations. (Ex. 7)

By letter of September 4th Suzuki agrees to help in returning the station to Morrissette (Ex. 8).

Morrissette contacts shell to advise she will be taking over the station and needs to get the application from Shell to do so (Ex. 9).

On September 8, 2003 Morrissette takes her nephew David Cho to the Shell station to take over management. The station manager Jerry Herman called Suzuki who tells them to call police if necessary and to tell Helen and her nephew to leave because they are trespassing. (Ex. 10, e-mail Havelock to O'Phelan @ 1:57PM).

Over the course of the next several days letters go back and forth between the parties attorneys as to how to proceed. Suzuki will not let Helen take possession of the store until the application is approved by Shell.

On September 16, 2003 Helen e-mails Shell to get information on the Retailer application forms. (Ex. 25, page 5 of 9).

September 17, Suzuki sends Morrissette an Agreement for Management of Business and plan to hand over the Mt View station to Morrissette, and confirmed the same with Shell, leaving the amount he says she owes him to be decided later by an arbitrator. (Ex. 15)

By September 23rd, David Cho (the Nephew) had contacted Suzuki about training at the station and Suzuki said would get back to David with an answer in a few days. (Ex. 25, page 4 of 9)

Oct. 7, 2003 John Scott of Shell gets back to Helen with information on the retailer application forms. (Ex. 25, page 5 of 9).

By Oct 28, 2003 Suzuki has again changed his mind and e-mails his attorney Havelock about numerous phone calls with Helen regarding the PURCHASE of the Mt. View Shell and tells Havelock to finalize the purchase agreement. (Ex. 25, page 6 of 9).

Suzuki sends a follow-up e-mail to Helen telling her Havelock with have the agreement soon. (Ex. 25, page 7 of 9).

On November 5, 2003, Havelock prepares "SALE AGREEMENT" and e-mails it to Suzuki who forwards it to Helen (Ex. 25, pages 8&9). "AGREEMENT FOR SALE OF BUSINESS" is attached to the e-mail and includes a sales price at $125,000, less refund of amounts owed Suzuki. (Ex. 4).

In a letter of December 3, 2003 (Ex. 16) by Havelock to Kasmar (Morrissette's then attorney) Suzuki says that the "sale is dead." Suzuki then talks about a plan to get the rent to Shell reduced from $12,000 per month to $8,000 per month. Suzuki wants to put the burden on Shell to reduce the lease price. "Ms. Morrissette should immediately pick up her pursuit of authorization to hold the franchise from Shell. If she had not filed her application, she should do so immediately. A&W will hand over operations to her immediately upon advice from Shell that she is ready. Please understand that without Shell's approval, there is no property and Shell can withdraw the right to use its name, etc, on the spot." (Ex. 16) Suzuki reminds that rent is due on December 15, 2003. Later he says, "We look to work cooperatively with Ms. Morrissette in transferring the management of the franchise to her since that appears to be her choice, but she needs to recognize the facts and she needs to keep you fully informed." (Ex. 16).

Suzuki and Morrissette continue back and forth over sale or management of the business but cannot come up with any agreement.

Finally the December rent of $14,596 is due on the 15th, and A&W says it doesn't have the money. (Ex. 19). Suzuki wants Morrissette to advance the money, which she is willing to do if Suzuki will sign the Purchase/Sale agreement but he will not.

Suzuki wants to send Shell a letter saying A&W will not operate the station at the present monthly lease price of $14,596 and will turn it back if the monthly payment is not reduced. (Ex 19). This letter only gives Shell 12 days notice as opposed to the 60 days required by the lease. (Ex. 20).

The Station is closed down on December 15, 2003 and is turned over to Shell without Morrissette's consent or agreement.

### Stipulations and agreements of the parties

The parties have made several agreements which should facilitate the trial of this matter:

1. The parties agree that the all defendants are jointly and severally liable for any and all damages if a judgment is entered in Plaintiffs favor. This means that Plaintiff need not produce any evidence to "pierce the corporate veil."
2. The parties agree that Plaintiff can have witness David Ho testify telephonically.
3. The parties agree that if Plaintiff uses testimony from Lisa Suzuki by deposition that should Defendant need her testify to rebut such testimony that she may be called as a witness telephonically.

### Citations to controlling Statutes and Cases

The case is controlled by the opinion of the 9th Circuit Court of Appeals as previously set forth. That Court found the following cases to be indicative of its holding:

*Alaska Sales and Service, Inc. v. Millet*, 735 P2d 743 (Alaska 1987)

### Evidentiary Issues

Defendant Terry Suzuki was the one with whom Plaintiff had most her dealings over the Mountain View Shell Station and A&W Food Mart. The credibility of Mr. Suzuki's testimony will make a difference as to whether the jury believes him. Mr. Suzuki was convicted of one count of Bank Fraud under 18 USC section 1344 in the United States District Court for the Central District of California on February 2, 1998 and imprisoned. The Order of Judgment and Probation was signed February 5, 1998.

A certified copy of the Order of Judgment and Probation is Exhibit 29 in Plaintiffs Exhibits.

Evidence Rule 609 deals with Impeachment by Evidence of Conviction of Crime.

Rule 609(a)(2) states:

> Evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.

Rule 609 (b) says the conviction is admissible if not over 10 years has elapsed since the date of the conviction.

Respectfully submitted this _21_ day of May 2007 at Anchorage, Alaska.

                              AGLIETTI, OFFRET & WOOFTER
                              Attorneys for Plaintiff

                              Ronald A. Offret, #7410096

I certify that on 5/21/07
A copy of the foregoing
Was served on
John Havelock
Per the ECF system.

Ronald A. Offret